RECORD NO. 12-1205

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

SEAN ROBERT FRANCIS,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

## RESPONSE BRIEF OF APPELLEE
## SEAN ROBERT FRANCIS

James R. Hawes
William Woodward Webb
THE EDMISTEN, WEBB & HAWES LAW FIRM
127 West Hargett Street, Suite 104 (27601)
P. O. Box 1509
Raleigh, North Carolina 27602
(919) 831-8700
jim.hawes@ew-law.com
woodywebb@ew-law.com

*Counsel for Appellee*                                      April 13, 2012

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    **I.**    **THE DISTRICT COURT DID NOT COMMIT ERROR IN DECLINING TO DECIDE WHETHER THE THREATENING, OBSCENE PHONE CALLS ROSE TO THE LEVEL OF SEXUALLY VIOLENT CONDUCT. . . . . . . . . . . . . . . . . . . . . . . 15**

    **II.**    **THE DISTRICT COURT'S DECISION TO GIVE DRS. PLAUD AND SINGER'S OPINIONS CONTROLLING WEIGHT IN FINDING THAT THE GOVERNMENT DID NOT DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT MR. FRANCIS "SUFFERS FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER" WAS WELL-REASONED, SUPPORTED BY THE RECORD AND NOT CLEARLY ERRONEOUS. . . . . . . . . . . . . . . . . . . . . . . . . 16**

    **III.**    **THE DISTRICT COURT'S DECISION TO GIVE DRS. PLAUD AND SINGER'S OPINIONS CONTROLLING WEIGHT IN FINDING THAT THE GOVERNMENT DID NOT DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT MR. FRANCIS "WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED" WAS**

i

**WELL-REASONED, SUPPORTED BY THE RECORD AND NOT CLEARLY ERRONEOUS.** . . . . . . . . . . . . . . . . . . . . . . . . 20

    **A.**    **The "serious mental illness" and "serious difficulty" prong are legally and factually separate analyses.** . . . . . . . . . . . . 20

    **B.**    **The district court did not clearly err in choosing to give Drs. Plaud and Singer's opinions controlling weight over that of the government's experts.** . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

**Cases:**

*Addington v. Texas,*
    441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Anderson v. Bessemer City*,
    470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Easley v. Cromartie,*
    532 U.S. 234 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hendricks v. Central Reserve Life Ins. Co.,*
    39 F.3d 507 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jimenez v. DaimlerChrystler Corp.,*
    269 F. 3d 439 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kansas v. Crane*,
    534 U.S. 407 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Comstock*,
    627 F.3d 513 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 20

*United States v. Hall,*
    664 F.3d 456 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Mehta,*
    594 F.3d 277 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Murray,*
    65 F.3d 1161 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Shields,*
    649 F.3d 78 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

*United States v. United States Gypsum Co.,*
    333 U.S. 364 (1948)12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes:**

18 U.S.C. § 4247(a)(5)-(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 20

## STATEMENT OF THE ISSUES

1.      Did the district court commit error in declining to decide whether the threatening, obscene phone calls rose to the level of sexually violent conduct when it found that the government did not demonstrate by clear and convincing evidence that Mr. Francis "suffers from a serious mental illness, abnormality or disorder" and that Mr. Francis "would not have serious difficulty refraining from sexually violent conduct if released?"

2.      Did the district court clearly err in deciding to give Drs. Plaud and Singer's opinions controlling weight in finding that the government did not demonstrate by clear and convincing evidence that Mr. Francis "suffers from a serious mental illness, abnormality or disorder" when this decision was well reasoned and supported by the record?

3.      Did the district court clearly err in deciding to give Drs. Plaud and Singer's opinions controlling weight in finding that the government did not demonstrate by clear and convincing evidence that Mr. Francis "would have serious difficulty refraining from sexually violent conduct if released" when this decision was well reasoned and supported by the record?

## STATEMENT OF THE CASE

On January 9, 2010, the government filed a Certification of a Sexually

1

Dangerous Person certifying that the respondent-appellee, Sean Robert Francis, was a sexually dangerous person pursuant to the Adam Walsh Act (the "Act"). (App. 15-18). The district court conducted a commitment hearing on October 5-7, 2011. (App. 11).

The district court found that Mr. Francis did not meet the criteria for commitment because the government did not prove by clear and convincing evidence that Mr. Francis 1) suffers from a serious mental illness, abnormality or disorder and 2) would have serious difficulty in refraining from sexually violent conduct or child molestation if released. (App. 537). The district court, accordingly, dismissed the case and ordered Mr. Francis's release on January 20, 2012. (App. 540). On February 3, 2012, the government filed an emergency motion to stay Mr. Francis' s release and, on that same date, the district court denied the emergency motion to stay. (App. 13). Mr. Francis was released from BOP custody on the evening of February 3, 2012. On February 9, 2012, the government appealed the district court's Order of January 20, 2012. (App. 541). Since his release on February 3, 2012, Mr. Francis has been in the community with a cell phone, as mandated by the United States Probation Office, and has not made any threatening and/or obscene phone calls or otherwise re-offended.

2

## STATEMENT OF FACTS

*Facts Relating to Mr. Francis*

Mr. Francis is a 33 year old white heterosexual male born in Charleston, South Carolina. (App. 83). His father was reportedly physically and emotionally abusive to Mr. Francis and his mother, and Mr. Francis's mother reportedly had a number of extramarital affairs. (App. 514). After a number of separations, Mr. Francis' parents divorced in 1993 and a custody battle ensued in which, in Mr. Francis' words, his mother "poisoned him" against his father. (App. 514).

At the age of thirteen, Mr. Francis made an obscene phone call to a female classmate and her mother apparently as a result of Mr. Francis' mother informing him that a neighbor had made a threatening call to her and relating that she was very disturbed by the call. (App. 515).

On August 29, 1998, at the age of 20, Mr. Francis was charged with two counts of Second Degree Aggravated Harassment for two threatening phone calls that he had placed. (App. 515). On February 10, 1999, Mr. Francis pled guilty to one of these counts and was sentenced to three years of probation. (App. 515).

In November of 1999, Mr. Francis was charged with eight counts of Making Threatening Interstate Communications based on evidence that he had been calling women and making sexually obscene threats to them. (App. 516). Mr.

3

Francis was convicted, sentenced to 22 months imprisonment and released from Bureau Of Prison ("BOP") custody on July 6, 2001.  (App. 516).

In late 2001, Mr. Francis's release was revoked and he was sentenced to 24 months imprisonment when he admitted to his probation officer that he had made approximately 50 threatening phone calls following his release.  (App. 516).  On September 13, 2003, Mr. Francis was released from federal custody.  (App. 516).

On December 16, 2001, Mr. Francis was accused of raping Emily, a female college student at Marist College.  (App. 516).  This allegation was thoroughly investigated by the Poughkeepsie Police Department.  (App. 516)  Mr. Francis admitted to having consensual sex with Emily that day.  (App. 516).  Mr. Francis was never arrested or charged with any offense relating to this investigation. (App. 516).

In December 2003, Mr. Francis was arrested and charged with eighteen counts of Making Interstate Threatening Communications.  (App. 516).  On September 16, 2005, Mr. Francis received a sentence of 70 months incarceration. (App. 516).  Prior to his release from BOP custody, on September 12, 2008, the BOP Certification review panel found that Mr. Francis **did not** meet the criteria of a sexually dangerous person under the Adam Walsh Act.  (App. 517).   On January 12, 2009, Mr. Francis was released from BOP custody and upon his

release he was **not** required to register as a sex offender. (App. 517). While on release Mr. Francis had a steady job, was financially independent, was renting his own apartment and was in a healthy relationship with a female. (App. 510).

Mr. Francis's supervision was revoked in September of 2009. (App. 517). The initial probation violation was for renting a pornographic movie on his cable box. (App. 517). His probation officer followed up with a second violation for Not Providing Information to his Probation Officer. (App. 517). These two violations resulted in his expulsion from Sex Offender Treatment and this led his probation officer to file a third violation (for being expelled from the Sex Offender Treatment Program). (App. 517). As a result of the three violations, Mr. Francis was sentenced to six months imprisonment to be followed by 12 months of supervised release. (App. 517). Mr. Francis was scheduled to be released on February 6, 2010, however, on January 29, 2010, eight days before he was due to be released from prison, the Government certified Mr. Francis under the Act. (App. 517). Mr. Francis testified that he has not made any threatening phone calls since 2003. (App. 519).

*Facts Found at the Hearing*

In order to commit Mr. Francis under the Act, the government had to prove three prongs by clear and convincing evidence: (1) that he has engaged or

attempted to engage in sexually violent conduct or child molestation; (2) that he suffers from a serious mental illness, abnormality, or disorder, and (3) that as a result of the illness, abnormality, or disorder, he would have serious difficulty refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(5)-(6); *See United States v. Comstock*, 627 F.3d 513, 519 (4th Cir. 2010).

At the hearing, four experts and Mr. Francis testified and all three prongs were in dispute. Drs. Malinek and Perkins testified on behalf of the government and Drs. Plaud and Singer testified on behalf of Mr. Francis.

Mr. Francis has never disputed the fact that in his past he has made numerous threatening, obscene phone calls. He testified under oath during the hearing that he had made such calls and that his last such calls were made in 2003. (App. 519, 537). Mr. Francis testified that the "victims" he described during sex offender treatment were fabricated or embellished for the purpose of staying in a sex offender treatment program. (App. 538). He testified that he did not rape "Emily." (App. 519) He further testified that he has not ever committed a "hands-on" offense and that he is not going to commit a "hands-on" offense in the future. (App. 490). Finally, Mr. Francis testified that he will not make any more threatening, obscene phone calls in the future. (App. 490).

6

In Dr. Malinek's initial report, he determined that Mr. Francis met the criteria for commitment under the Adam Walsh Act and gave Mr. Francis the following diagnosis, based solely on a review of records and without any contact with Mr. Francis: Paraphilia Not Otherwise Specified (NOS"), nonconsent, with prominent sadistic features. (App. 63). In a supplemental report drafted after conducting an in-person interview with Mr. Francis and at trial, Dr. Malinek gave the same diagnosis. (App. 305, 520). However, at his deposition and at trial, when pressed, Dr. Malinek stated that the "more accurate" diagnosis would be Paraphilia NOS, Telephone Scatologia. (App. 344, 520). Dr. Malinek used a number of actuarial risk assessment tools in determining that Mr. Francis would have serious difficulty in refraining from sexually violent conduct. (App. 67-74).

Dr. Perkins drafted a report and testified based solely on her review of available records and without any clinical contact with Mr. Francis. (App. 363). In her report, Dr. Perkins diagnosed Mr. Francis with sexual sadism. (App. 364). She noted that in 2009, she conducted an evaluation of Mr. Francis for the Sex Offender Certification Review Board in which she diagnosed Mr. Francis with sexual sadism, paraphilia NOS, nonconsent and telephone scatologia. (App. 361-62). Dr. Perkins explained that she did not diagnose Mr. Francis with paraphilia NOS, telephone scatologia this time around because she "felt that sexual sadism

7

was the more appropriate diagnosis." (App. 364). She also utilized actuarial risk assessment tools and found that Mr. Francis met the criteria for commitment under the Adam Walsh Act. (App. 525).

Dr. Plaud found that Mr. Francis "is not accurately or adequately described, labeled or diagnosed as an individual who has a condition that is in any way consistent with the definition of a sexually dangerous person." (App. 525). In his expert report, Dr. Plaud opined that "Mr. Francis does not 'suffer from a serious mental illness, abnormality or disorder' at this time." (App. 84). Though "at one point he may have met a provisional type of diagnosis for a sexual disorder that is not otherwise specified, telephone scatalogia" there is "no evidence at this time of ongoing urges for him to engage in obscene telephone calling." (App. 84, 91). Dr. Plaud pointed to the fact that in 2009, Mr. Francis was in the community for seven to eight months and in possession of a cellular phone with no indication that he made any obscene or threatening telephone calls, as evidence of Mr. Francis's current level of volitional control. (App. 84). At trial, Dr. Plaud clarified that although it was "possible" to diagnose Mr. Francis with paraphilia- NOS (telephone scatalogia), it would be a "weak diagnosis at the present time." (App. 390). He further explained that "if you get this diagnosis, you always have it" and that the "strength of the current diagnosis" is what is "important." (App. 398).

8

In his report, Dr. Plaud stated that "there is no support for the professional conclusion...that he would have serious difficulty in refraining from sexually violent conduct if he were released from a secure facility. (App. 83). He testified that "I believe that there really isn't even much credibility at this point to conclude that he would be likely to even make crank telephone calls or sexually motivated calls in any manner." (App. 391). He also noted that Mr. Francis' last threatening phone calls were in 2003 and called Mr. Francis' most recent behavior in the community (the eight months in 2009) the "gold standard" in measuring Mr. Francis' current level of volitional control. (App. 399, 408). Dr. Plaud stated that "there are no empirically validated tools, including any actuarial or statistical risk tools, that would be adequate to evaluate Mr. Francis at this time given his history of adjudicated sexual offenses which are entirely non-contact based and limited to telephone verbal abuse." (App. 85). Finally, Dr. Plaud testified that "there's doubt all over this case, from his conduct, what he did, what he didn't do, what type of diagnosis is most appropriate in this case. There is so much doubt from the beginning to the end of this case..." (App. 400).

Dr. Singer testified that Mr. Francis does not meet the "threshold" for commitment under the Adam Walsh Act. In his report and at trial, Dr. Singer opined that Mr. Francis did not currently suffer from a serious metal illness,

9

abnormality or disorder.  (App. 110, 432).  Dr. Singer diagnosed Mr. Francis with a Paraphilia-Not Otherwise Specified (telephone scatologia) and adjustment disorder with depressed mood.  (App. 110).  In his report, Dr. Singer quoted the cautionary note found in the DSM-IV-TR and summarized the note warning, "because functional impairment varies markedly across individuals with the same diagnosis, a DSM diagnosis is not destiny."  (App. 109).  When asked at trial whether either of these diagnoses as they apply to Mr. Francis qualify as a serious mental illness, abnormality or disorder, Dr. Singer responded emphatically, "no, nowhere near."  (App. 432).

Dr. Singer found that "Mr. Francis does not have a mental disorder that predisposes him to sexually reoffend, let alone causally links him to future sex offending behavior that he has substantial difficulty controlling of the severity to meet the Adam Walsh Act standards."  (App. 110).  Dr. Singer agreed with Dr. Plaud that Mr. Francis' most recent behavior in the community (the eight months in 2009) is the "gold standard" in measuring Mr. Francis' current level of volitional control.  (App. 439).  Dr. Singer testified that he did not utilize any actuarials because he does not "think they're worth anything" for determining the "serious difficulty" prong.  (App. 432).  He utilized the Sexual Violence Risk-20 ("SVR-20"), a structured clinical checklist designed for the risk assessment of

10

sexual violence in sex offenders. (App. 107). Dr. Singer "integrated" the SVR-20 variables and concluded that "[t]aken together, the SVR-20 analysis indicates that Mr. Francis' risk for committing a sexual offense is well ensconced in the low range." (App. 108).

The district court declined to decide whether the threatening, obscene phone calls rose "to the level of sexually violent conduct." (App. 537). The district court found Drs. Plaud and Singer more persuasive than Drs. Malinek and Perkins. Accordingly, the court gave Drs. Plaud and Singer's testimony controlling weight and found that the government did not meet its burden of proof by clear and convincing evidence as to the last two prongs of the Act.

## SUMMARY OF THE ARGUMENT

The district court did not commit error in declining to decide whether the threatening, obscene phone calls made by Mr. Francis rose to the level of sexually violent conduct under the Act. The district court dismissed the petition in this case because it found that the government failed to prove by clear and convincing evidence that 1) Mr. Francis currently suffers from a mental illness, abnormality, or disorder, or 2) that he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. The district court made these findings by giving controlling weight to the opinion of Mr. Francis' experts and by

11

giving less weight to the opinions of the government's experts.  The court's decision to give controlling weight to Mr. Francis' experts was supported by the record, was well within the court's discretion, and was not erroneous and its findings of fact represent a permissible and reasonable interpretation of the evidence presented at the hearing.

Moreover, "[t]he question of whether a person is 'sexually dangerous' is 'by no means an easy one' and 'there is no crystal ball that an examining expert or court might consult to predict conclusively whether a past offender will recidivate.'" *United States v. Hall*, 664 F.3d 456, 467 quoting *United States v. Shields*, 649 F.3d 78, 89 (1st Cir. 2011).  "In the end, however, it is for the factfinder to decide among reasonable interpretations of the evidence and determine the weight accorded to expert witnesses." *Id.*

## STANDARD OF REVIEW

Post-evidentiary factual findings of the District Court Judge are reviewed solely for clear error and are only disturbed when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Hall*, 664 F.3d at 462 citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) and *Easley v. Cromartie*, 532 U.S. 234, 242 (2001).  Legal conclusions are reviewed *de novo*.  *United States v. Mehta*, 594 F.3d 277,

12

281 (4th Cir. 2010).

As the Court in *Hall* stated by way of attribution to *Anderson v. Bessemer City*, 470 U.S. 564 (1985), the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Hall*, 664 F.3d at 462 quoting *Anderson v. Bessemer City*, 470 U.S. at 573. "'If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Hall*, 664 F.3d at 462 quoting *Anderson v. Bessemer City*, 470 U.S. at 573-74. "'When findings are based on determinations regarding the credibility of witnesses,' we give 'even greater deference to the trial court's findings.'" *Hall*, 664 F.3d at 462 quoting *Anderson v. Bessemer City*, 470 U.S. at 575.

Again in *Hall*, the Court emphatically stated, "[a]s with lay witnesses, 'evaluating the credibility of experts and the value of their opinions is [also] a function best committed to the district courts, and one to which appellate courts must defer,' and we 'should be especially reluctant to set aside a finding based on the trial court's evaluation of conflicting expert testimony.'" *Hall*, 664 F.3d at 462 quoting *Hendricks v. Central Reserve Life Ins. Co.*, 39 F.3d 507, 513 (4th Cir.

13

1994).

Here, the district court expressly made credibility determinations about and weighed conflicting testimony from the four experts who testified. These credibility determinations are all reviewed for clear error, with discretion given to the district court. *See United States v. Murray*, 65 F.3d 1161, 1169 (4th Cir. 1995).

## ARGUMENT

In essence, the government's brief recapitulates arguments that have already been considered and rejected by the district court. The district court did not commit error in "assuming, without deciding" that Mr. Francis had engaged in sexually violent conduct in the past. (App. 538). The district court based its conclusions on the "severe mental illness" prong and the "serious difficulty" prong on its decision to give controlling weight to Mr. Francis' experts, Drs. Plaud and Singer, instead of the government's experts, Drs. Malinek and Perkins. The operative questions therefore are not a *de novo* review of whether Mr. Francis suffers from a serious mental illness or whether he would have serious difficulty refraining from sexually violent conduct if released, but whether the district court's decision to give controlling weight to Drs. Plaud and Singer was clearly erroneous. The record supports the district court's decision and, therefore, there

14

was no clear error in finding that the government did not meet its burden of proof.

## I.    THE DISTRICT COURT DID NOT COMMIT ERROR IN DECLINING TO DECIDE WHETHER THE THREATENING, OBSCENE PHONE CALLS ROSE TO THE LEVEL OF SEXUALLY VIOLENT CONDUCT.

The district court did not commit error in declining to decide whether the threatening, obscene phone calls made by Mr. Francis rose to the level of sexually violent conduct under the Act because the court found that the government did not demonstrate by clear and convincing evidence that Mr. Francis "suffers from a serious mental, illness, abnormality or disorder" and it also found that the government did not meet its burden of proving that Mr. Francis "would have serious difficulty refraining from sexually violent conduct if released."

The question of whether someone "has engaged or attempted to engage in sexually violent conduct or child molestation" is a statutorily distinct question from the "serious mental illness" and "serious difficulty" questions.  18 U.S.C. § 4247(a)(5)-(6) (noting statutory requirement of separate determinations); *Comstock*, 627 F.3d at 519 (same).  The Act requires the government to prove all three prongs by clear and convincing evidence.

It was proper for the district court to "assum[e], without deciding" (App. 538) that these threatening, obscene phone calls rose to the level of sexually

15

violent conduct because this determination became immaterial when the court found "that the government has failed to show that the Respondent will have serious difficulty in refraining from sexually violent conduct or child molestation if released." (App. 537). This decision to assume that Mr. Francis had engaged in sexually violent conduct was also perfectly proper given the totality of the evidence presented.

## II. THE DISTRICT COURT'S DECISION TO GIVE DRS. PLAUD AND SINGER'S OPINIONS CONTROLLING WEIGHT IN FINDING THAT THE GOVERNMENT DID NOT DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT MR. FRANCIS "SUFFERS FROM A SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER" WAS WELL-REASONED, SUPPORTED BY THE RECORD AND NOT CLEARLY ERRONEOUS.

The district court did not clearly err in finding the testimony of Drs. Plaud and Singer to be the most convincing in finding that the government did not meet its burden of proving by clear and convincing evidence that Mr. Francis "suffers from a serious mental illness, abnormality, or disorder." (App. 532).

In its brief, the government asserts that the district court "declined to make *any* finding regarding mental illness" (government's emphasis). This assertion is simply not true. In adopting "all but section III(A) of Respondent's Findings of Fact and Conclusions of Law" and incorporating "those findings and conclusions as if they were fully set forth herein," the district court held that, "based on the

16

testimony of Drs. Plaud and Singer, as well as the other evidence in this case, the Court cannot find by clear and convincing evidence that Mr. Francis suffers 'from a serious mental illness, abnormality or disorder.'" (App. 532, 536).

In its Order, the district court stated that it was "persuaded by the testimony of Drs. Plaud and Singer that Respondent at one time suffered from a diagnosis of Paraphilia NOS-telephone scatologia, but that there is at least a question as to whether it remains an accurate diagnosis today." (App.538-39). As stated above, the government must prove its case by clear and convincing evidence. The clear and convincing evidence standard of proof is an "intermediate standard," lying somewhere "between preponderance of the evidence and proof beyond a reasonable doubt." *Addington v. Texas*, 441 U.S. 418, 425 (1979). "'Clear and convincing' has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Jimenez v. DaimlerChrystler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotations and citations omitted). Because the district court found that "there remains at least a question as to whether it remains an accurate diagnosis today," the government certainly did not meet its burden of producing in the mind of the district court "a firm belief or conviction, without hesitancy" that Mr. Francis currently suffers from a serious

17

mental illness.

Also in its brief, the government mischaracterizes the testimony of Mr. Francis' experts when it states that Mr. Francis' "diagnosis of paraphilia (in which all experts at the hearing concurred) satisfies the requirement of a serious mental illness that impairs his volition. No more is required..." to commit Mr. Francis.

In his expert report, Dr. Plaud opined that "Mr. Francis does not 'suffer from a serious mental illness, abnormality or disorder' at this time." (App. 84). Though "at one point he may have met a provisional type of diagnosis for a sexual disorder that is not otherwise specified, telephone scatalogia" there is "no evidence at this time of ongoing urges for him to engage in obscene telephone calling." (App. 84, 91). Dr. Plaud pointed to the fact that in 2009 Mr. Francis was in the community for seven to eight months and in possession of a cellular phone with no indication that he made any obscene or threatening telephone calls as evidence of Mr. Francis's current level of volitional control. (App. 84). At trial, Dr. Plaud clarified that although it was "possible" to diagnose Mr. Francis with paraphilia-NOS (telephone scatologia), it would be a "weak diagnosis at the present time." (App. 390). He further explained that "if you get this diagnosis, you always have it" and that the "strength of the current diagnosis" is what is "important." (App. 398).

In his report and at trial, Dr. Singer opined that Mr. Francis did not currently suffer from a serious metal illness, abnormality or disorder. (App. 110, 432). Dr. Singer diagnosed Mr. Francis with a Paraphilia-NOS (telephone scatologia) and adjustment disorder with depressed mood. (App. 110). In his report, Dr. Singer quoted the cautionary note found in the DSM-IV-TR and summarized the note warning, "because functional impairment varies markedly across individuals with the same diagnosis, a DSM diagnosis is not destiny." (App. 109). When asked at trial whether either of these diagnoses as they apply to Mr. Francis qualify as a serious mental illness, abnormality or disorder, Dr. Singer responded emphatically, "no, nowhere near." (App. 432).

Considering these expert opinions, the district court's decision to give controlling weight to Drs. Plaud and Singer's opinions in finding that the government did not meet its burden of proving by clear and convincing evidence that Mr. Francis "suffers from a serious mental illness, abnormality, or disorder" is well-reasoned, supported by the record and not clearly erroneous.

19

**III.  THE DISTRICT COURT'S DECISION TO GIVE DRS. PLAUD AND SINGER'S OPINIONS CONTROLLING WEIGHT IN FINDING THAT THE GOVERNMENT DID NOT DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT MR. FRANCIS "WOULD HAVE SERIOUS DIFFICULTY IN REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED" WAS WELL-REASONED, SUPPORTED BY THE RECORD AND NOT CLEARLY ERRONEOUS.**

**A.  The "serious mental illness" and "serious difficulty" prong are legally and factually separate analyses.**

The question of whether someone suffers from a "serious mental illness" and the question of whether that person "would have serious difficulty refraining from sexually violent conduct if released" are constitutionally and statutorily distinct questions. *See Kansas v. Crane*, 534 U.S. 407, 412-13 (2002) (discussing constitutional need for volitional prong distinct from mental illness prong); 18 U.S.C. § 4247(a)(5)-(6) (noting statutory requirement of separate determinations); *Comstock*, 627 F.3d at 519 (same).

In the present case, as discussed above, the district court properly found that Mr. Francis does not suffer from a serious mental illness, abnormality, or disorder. The district court also properly found that "irrespective of whether or not Respondent is still suffering from a serious mental disorder, the court finds credible the testimony of Drs. Plaud and Singer that Respondent would not have serious difficulty from refraining from sexually violent conduct if released."  These findings by the court

20

acknowledge the fact that the government failed to meet its burden on both prongs two and three as they pertain to Mr. Francis, but reinforce the fact that, pursuant to the commitment statute, if the government fails to meet its burden on any one of the three prongs, the district court is required to enter judgment in favor of Mr. Francis and against the government.

**B.    The district court did not clearly err in choosing to give Drs. Plaud and Singer's opinions controlling weight over that of the government's experts.**

The district court found the testimony of Drs. Plaud and Singer to be the most credible and convincing in finding that the government did not meet its burden of proving by clear and convincing evidence that Mr. Francis "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." (App. 532-33, 539).

In his report, Dr. Plaud stated that "there is no support for the professional conclusion...that he would have serious difficulty in refraining from sexually violent conduct if he were released from a secure facility." (App. 83). He testified that "I believe that there really isn't even much credibility at this point to conclude that he would be likely to even make crank telephone calls or sexually motivated calls in any manner." (App. 391). He also noted that Mr. Francis' last threatening phone calls were in 2003 and called Mr. Francis' most recent behavior in the community (the

eight months in 2009) the "gold standard" in measuring Mr. Francis' current level of volitional control. (App. 399, 408). Dr. Plaud stated that "there are no empirically validated tools, including any actuarial or statistical risk tools, that would be adequate to evaluate Mr. Francis at this time given his history of adjudicated sexual offenses which are entirely non-contact based and limited to telephone verbal abuse." (App. 85). Finally, Dr. Plaud testified that "there's doubt all over this case, from his conduct, what he did, what he didn't do, what type of diagnosis is most appropriate in this case. There is so much doubt from the beginning to the end of this case..." (App. 400).

Dr. Singer found that "Mr. Francis does not have a mental disorder that predisposes him to sexually reoffend, let alone causally links him to future sex offending behavior that he has substantial difficulty controlling of the severity to meet the Adam Walsh Act standards." (App. 110). Dr. Singer agreed with Dr. Plaud that Mr. Francis' most recent behavior in the community (the eight months in 2009) is the "gold standard" in measuring Mr. Francis' current level of volitional control. (App. 439). Dr. Singer testified that he did not utilize any actuarials because he does not "think they're worth anything" for determining the "serious difficulty" prong. (App. 432). He utilized the Sexual Violence Risk-20 ("SVR-20"), a structured clinical checklist designed for the risk assessment of sexual violence in sex offenders.

22

(App. 107).  Dr. Singer "integrated" the SVR-20 variables and concluded that "[t]aken together, the SVR-20 analysis indicates that Mr. Francis' risk for committing a sexual offense is well ensconed in the low range."  (App. 108).

The court found significant that Drs. Plaud and Singer "considered the admissions by Respondent to sexually violent offenses" and that they "both noted the difficulty in using actuarial or statistical risk assessment tools to evaluate someone, such as Respondent, who has not been *shown* to have been engaged in hands-on or contact offenses" (district court's emphasis).  (App. 539).  The district court further noted and found significant that "both of these experts highlighted the fact that Respondent had remained in the community for more than six months while possessing a cell phone without engaging in threatening or obscene phone call behaviors, opining that this demonstrated Respondent's level of volitional control." (App. 539).  In conclusion, the district court found "most convincing the methods and judgment employed by Drs. Plaud and Singer in assessing whether Respondent possesses the volitional control to refrain from engaging in sexually deviant behavior in the future, and finds that the government has failed to show by clear and convincing evidence that Respondent will have serious difficulty refraining from sexually violent conduct if released."  (App. 539).

Considering these expert opinions, the district court's decision to give

23

controlling weight to Drs. Plaud and Singer's opinions in finding that the government did not meet its burden of proving by clear and convincing evidence that Mr. Francis "would have serious difficulty in refraining from sexually violent conduct or child molestation if released" is well-reasoned, supported by the record and not clearly erroneous.

## CONCLUSION

For the above reasons, Mr. Francis respectfully requests that the district court be affirmed.

Respectfully submitted this 13th day of April, 2012.

/s/ James R. Hawes
James R. Hawes
N.C. State Bar No.: 36802
The Edmisten, Webb & Hawes Law Firm
P.O. Box 1509
Raleigh, NC 27602
(919) 831-8700
jim.hawes@ew-law.com

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Page Limitation,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) because:

        this brief does not exceed 30 pages.

2.      This brief complies with the typeface requirements of  Fed. R. App. P. 32(a)(5) and the type style requirements of  Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using WordPerfect in 14 point Times New Roman.


                                        /s/ James R. Hawes
                                        Counsel for Appellee

Dated: April 13, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2012, I filed with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit the required paper copies of the foregoing Response Brief of Appellee and further certify that same was served via the CM/ECF System of the United States Court of Appeals for the Fourth Circuit.

/s/ James R. Hawes
Counsel for Appellee